# NOS. 12-15-00162-CR
## 12-15-00163-CR
## 12-15-00164-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GAYLORD OWEN STEVENS,* *APPELLANT* | *§* | *APPEALS FROM THE 7TH* |
| *V.* | *§* | *JUDICIAL  DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Gaylord Owen Stevens appeals his convictions for possession of child pornography. Appellant raises two issues on appeal.  We affirm.

### BACKGROUND

In late December 2013, Lindale Police Department Sergeant Chad McElyea spoke with a man later identified as Appellant in a local restaurant parking lot.  Appellant told Sergeant McElyea that he owned several horses, and that in an effort to promote a museum project, Appellant traveled around the country, raised money, and conducted trail rides.  On January 1, 2014, Sergeant McElyea saw two females, later identified as Holly Wright and Jessica Coffel, walking through a pasture behind the restaurant.  Suspicious, he followed them and saw them approach six tied up horses.  Sergeant McElyea learned that they were working with Appellant on the trail ride project, and determined that Appellant had permission to allow the horses to stay in the pasture.  However, the landowner wanted Appellant to remove the horses by the following morning.  Appellant did not remove the horses as instructed, and upon close inspection, the authorities believed that the horses were in poor condition and moved them to another location

for treatment. On January 2, 2014, Officer James Burnette, a patrol officer for the City of Lindale, arrested Appellant for cruelty to animals, and transported him to the county jail.

During Sergeant McElyea's investigation, Wright and Coffel stated that they were obtaining a scholarship at the University of Texas to receive a bachelor's degree for participating in the trail rides. This raised Sergeant McElyea's suspicion as to the project's legitimacy. After Appellant's animal cruelty arrest, Wright and Coffel approached Sergeant McElyea with medication bottles and told him they believed that they were drugged, possibly sexually assaulted, and that Appellant took photos of them without their consent. Appellant rented a room at a local hotel, where he, Wright, and Coffel stayed. Due to their suspicions, Wright and Coffel looked through Appellant's two laptop computers, discovered photographs of other nude girls, and told the police their observations.

Based on this information, Sergeant McElyea obtained a search warrant for the hotel room. The hotel manager, Patsy Hidinger, released the computers to the police, who determined that they contained photographs depicting child pornography.

Appellant was arrested and indicted in three cases for possession of child pornography. The indictments alleged that Appellant had previously been convicted of a felony, enhancing the punishment level to that of a second degree felony in all three cases. Appellant pleaded "not guilty" in all three cases and "not true" to the enhancements. He also filed a motion to suppress the photographs based on the police's acquisition and search of his computers. After a joint bench trial, the trial court overruled Appellant's motion to suppress, found Appellant guilty of all three offenses, found that the enhancements were true, and sentenced Appellant to fifteen years of imprisonment in each case, to be served consecutively. This appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant contends that the trial court erred in overruling his motion to suppress the evidence of the computers and the evidence found on the computers, because Hidinger acted as an agent of the State when she released the computers to the police.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to

suppress is generally reviewed under an abuse of discretion standard. ***Shepherd v. State***, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. ***Neal v. State***, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. ***Maxwell v. State***, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See* ***State v. Ross***, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When a trial court makes express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports those factual findings. ***Valtierra v. State***, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The prevailing party is entitled to "'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" ***State v. Castleberry***, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting ***State v. Garcia-Cantu***, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *See* ***Ross***, 32 S.W.3d at 855-56; ***Carmouche***, 10 S.W.3d at 327-28; ***State v. Ballard***, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

**Applicable Law**

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. For the purposes of the Fourth Amendment, a "search" occurs when the government violates a subjective expectation of privacy that society considers objectively reasonable. *See* ***Kyllo v. United States***, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042–43, 150 L. Ed. 2d 94 (2001). However, the Fourth Amendment proscribes only governmental action, not action by a private individual who is not acting as an agent of the government or with the knowledge and participation of a government official. ***United States v. Jacobsen***, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984).

The government may not encourage conduct by private persons that the government itself cannot do, and if the government does encourage a search, or the private citizen searches solely

for the purpose of aiding in law enforcement, the search is illegal. *Morrow v. State*, 757 S.W.2d 484, 489 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 488, 91 S. Ct. 2022, 2049, 29 L. Ed. 2d 564 (1971)). To determine whether a person is acting as an "instrument" or agent of the government, we ask (1) whether the government knew of, and acquiesced in, the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or, instead, to further his own ends. *Stoker v. State*, 788 S.W.2d 1, 11 (Tex. Crim. App. 1989); *Dawson v. State*, 106 S.W.3d 388, 392 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

To preserve error for appellate review, the complaining party must make a timely, specific objection and obtain a ruling on the objection. Tex. R. App. P. 33.1(a). When the trial court carries a pretrial motion to suppress through trial, the defendant must make a timely objection to the evidence when it is offered at trial in order to preserve error. *See Trung The Luu v. State*, 440 S.W.3d 123, 128 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## Discussion

Appellant contends that the trial court erred in overruling his motion to suppress the evidence of the computers and the photographs found on the computers, because Hidinger acted as an agent of the State when the police allegedly instructed her to take possession of and release the computers to them.

The State contends that Appellant failed to object when the evidence was admitted at trial, and that he therefore waived this issue. The parties and the trial court generally discussed the motion to suppress at a pretrial hearing, but the trial court refrained from making a ruling on the motion at the time, explaining that it wished to carry the motion through trial. At trial, through an expert computer forensic examiner, the State offered photos found on Appellant's computers depicting child pornography. After voir dire of the witness, Appellant's counsel stated that "we're not going to have any objection to that," and the trial court admitted them for all purposes. Consequently, Appellant waived this issue. *See Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005) (holding that statement during trial that defendant had "no objection" to admission of evidence waives error in evidence's admission even if trial court expressly overruled motion to suppress in pretrial ruling); *Trung The Luu*, 440 S.W.3d at 128 (holding error not preserved when trial court did not rule on motion to suppress until after evidence admitted without objection).

4

Even if Appellant had preserved the issue for our review, we would conclude that the trial court did not abuse its discretion in overruling his motion. Sergeant McElyea and Hidinger testified at the trial. After the parties rested, the trial court made the following pertinent express findings in relation to the police's acquisition of Appellant's computers:[1]

> The evidence is clear that the computers were in the Defendant's hotel room; that he was the one that had rented the hotel room; that, apparently, a day-by-day rental to be paid daily; that the evidence showed that the Defendant didn't return or pay for the room, which brought about Ms. Hidinger telling the two girls either they needed to pay or get out; that they left.
> Ms. Hidinger didn't do anything to the room until the next day. Apparently, she found the -- well, all the stuff she talked about. The things she took possession of [included the computers.] [S]he took all the cameras as well; put them in a box, took them to her office, and had most of the rest of the room cleaned up and put out in the Defendant's car, along with the saddles.
> The evidence showed that the Defendant was, in fact, in jail on the animal cruelty charge. I don't know that the evidence in the trial really reflected exactly when he was released; but, clearly, it was well after the events that we did have evidence upon.
> That the hotel, obviously, had a right to empty the room and let it be sold or rented to someone else, so that any property that was left there, I think, under the law, would fit under the abandoned property area.
> The testimony from her was that the Defendant never came back and talked -- or sought the property.
> . . . .
> The law says that if a private citizen takes possession of property in a hotel room -- such as we have -- that it would be abandoned property if the person didn't exercise control over it. Which, I think, clearly, under the law, was abandoned property -- as the law calls abandoned property in a situation like this.
> As a result, the actual taking of the property was done by a private citizen, the hotel manager. And there was dispute between -- on the questions and some of the answers with Ms. Hidinger. It was not crystal clear whether she removed everything and then called law enforcement or whether she called law enforcement before she removed everything; whether they told her to take it out or not.
> It was not clear to me, but if you review all of her testimony, along with Sergeant McElyea's testimony, it certainly appears that the McElyea testimony was more accurate of what went on than what Ms. Hidinger remembered. The Court notes that Ms. Hidinger was in advanced age; had trouble hearing y'all. And so some of those things could have, I guess, played into her testimony. But part of the reasons for the Court's findings is, is that law enforcement was actively seeking a search warrant for those items at the same time, I think, she was doing the removal.
> . . . .
> The issue as to the computers, though, really is restricted to how law enforcement got them. They didn't get them under the search warrant, even though they were listed on the return on the search warrant, number one. They received them from Ms. Hidinger, which is important from a legal standpoint.

---

[1] Sergeant McElyea obtained two search warrants, the first was to obtain the computers and other property, and the second to search the computers once he had them in his possession. There appeared to be errors in the first search warrant and its execution, but the parties agreed that if the authorities had lawfully obtained the computers from Hidinger irrespective of the first search warrant, then the search pursuant to the second warrant was valid. Therefore, the issue depended on whether Hidinger acted as an agent of the State when she obtained and released the computers to the authorities.

The trial court then expressly overruled Appellant's motion to suppress. The question of whether Hidinger acted as an agent of the State when she took possession of Appellant's computers and released them to law enforcement is a mixed question of law and fact that depends on the witnesses' credibility and demeanor. Thus, we defer to the trial court's express findings in that regard provided they are supported by the record. *See Neal*, 256 S.W.3d at 281.

Here, our review of the record showed some differences between the testimony of Hidinger and Sergeant McElyea. For example, in Hidinger's written statement, she wrote that the police told her to pack everything up in the room. Also, in contrast to Sergeant McElyea's testimony, Hidinger did not remember having a conversation with Sergeant McElyea telling her to stop cleaning the room the night prior to the search, and she believed that the sergeant was not the person who took possession of Appellant's computers. Moreover, she stated at times during her testimony that the police told her to pack the room, and at other times, that they did not.

However, although initially contradictory, Hidinger clarified her testimony. She testified that she called the police to notify them that she would clean out the room pursuant to company policy for abandoned rooms containing tenant property. She also testified clearly that she took possession of the computers and placed them in the hotel office for safekeeping. Furthermore, she stated that she never told police that she had the computers until they arrived to execute the search warrant. Hidinger testified that she simply gave the officers the computers when they arrived, without a request from the officers. Although there were some initial discrepancies in her testimony, Hidinger ultimately stated later in her testimony that no law enforcement officer told her to seize the computers or to release them to the officers.

Sergeant McElyea corroborated the key facts that he never told Hidinger to seize the computers, and that she took them pursuant to her rights as a hotel manager under company policy to prepare the room for rental. The trial court is the exclusive trier of fact and judge of the witnesses' credibility, and could believe or disbelieve all or any part of a witness's testimony. *See Ross*, 32 S.W.3d at 855; *Maxwell*, 73 S.W.3d at 281.

Therefore, the trial court could have concluded that Hidinger took the laptops not to assist law enforcement, but for a lawful purpose as a hotel manager pursuant to her company's policy on cleaning out abandoned rooms for rental to third parties and for safeguarding the property taken. Consequently, the trial court did not abuse its discretion in overruling Appellant's motion to suppress. *See Dawson*, 106 S.W.3d at 392 (holding that when term of occupancy expired in

6

hotel room, guest lost exclusive right to privacy and hotel manager may consent to search of room by police, because manager had legitimate reason to enter room in capacity as hotel manager).

Appellant's first issue is overruled.

<u>**SELF-REPRESENTATION**</u>

Appellant contends in his second issue that the trial court erred by allowing him to represent himself after trial commenced.

**<u>Standard of Review and Applicable Law</u>**

The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a criminal defendant may dispense with counsel and make his own defense at trial. *Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999) (citing *Faretta v. California*, 422 U.S. 806, 818–20, 95 S. Ct. 2525, 2533, 45 L. Ed. 2d 562 (1975)). To be constitutionally effective, such a decision must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *Id.* (citing *Godinez v. Moran*, 509 U.S. 389, 400–01, 113 S. Ct. 2680, 2687, 125 L. Ed. 2d 321 (1993)); *Faretta*, 422 U.S. at 834–36, 95 S. Ct. at 2541. The decision to waive counsel and proceed pro se is made "knowingly and intelligently" if it is made after admonishment with a full understanding of the right to counsel as well as the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997); *Faretta*, 422 U.S. at 834–836, 95 S. Ct. at 2541. The decision is made "voluntarily" if it is uncoerced. *Collier*, 959 S.W.2d at 626; *Godinez*, 509 U.S. at 401 n. 12, 113 S. Ct. at 2687 n.12. If the defendant maintains his desire to proceed pro se, he should be allowed to do so as long as the assertion of his right to self-representation is unconditional and not asserted to disrupt or delay the proceedings. *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992).

**<u>Discussion</u>**

Appellant's trial counsel represented him until the State rested. Appellant then stated that he wished to represent himself. The trial court held a *Faretta* hearing, making the relevant inquiries and admonishments, including a competency evaluation, as acknowledged by Appellant in his brief. Appellant stated at the hearing that he was sixty-five years old, graduated from high school, completed four years of study at various colleges without receiving a degree, and was

7

given an honorary doctorate in art from the University of Mexico due to the seminars and art shows he conducted at the university. Appellant stated that he had experience representing himself in the Smith County animal cruelty case, as well as for an assault bench trial in Florida. He had other past cases where an attorney represented him. He also stated that he had some familiarity with the Texas Rules of Evidence and had reviewed them, but he had not specifically reviewed the Texas Rules of Criminal Procedure or Texas Penal Code. Appellant stated that he knew the perils of representing himself, and that he thought his lawyer was intelligent. He stated at the hearing that he wished to represent himself because he sought testimony from specific witnesses who Appellant's trial counsel did not wish to call, which created a difference in strategy between Appellant and his counsel.

The trial court granted Appellant's request to represent himself, allowing trial counsel to remain as standby counsel. Appellant represented himself during his case-in-chief, until he stated that "I am absolutely . . . not qualified to do this, and I shouldn't have done it to start with. So I wanted to ask to be relieved as my own counsel." The trial court briefly allowed counsel to continue representing Appellant, but Appellant subsequently wished to represent himself during the punishment phase, a request the trial court granted. *See* **Moore**, 999 S.W.2d at 396-97 (finding no error in allowing appellant to assert his right to self-representation during his case-in-chief and again during the punishment phase of trial). Appellant explained that he only revoked his right to proceed pro se during his case-in-chief due to a fear of being tazed by sheriff's deputies from a tazer device worn on his leg in court. The court inquired further but found no evidence supporting Appellant's allegations.

Throughout his self-representation, Appellant made many errors, including attempting to call witnesses who had already been released, he was unable to properly subpoena witnesses, and he filed documents that were procedurally and legally ineffective. Moreover, Appellant did not urge a motion to suppress evidence that had been filed on his behalf earlier in the proceeding, he did not preserve error, and he argued that witnesses violated the rule, including accusations that one of the testifying police officers told other witnesses to lie. The trial court inquired further, including allowing Appellant's daughter to testify, who allegedly overheard the conversation outside the courtroom. However, her testimony did not confirm Appellant's allegations.

Appellant argues that this evidence does not show that he competently, knowingly, intelligently, and voluntarily waived his right to counsel. An assessment of the accused's

technical legal knowledge is not relevant to a court's analysis of whether a defendant knowingly and intelligently exercised his right to defend himself. *Faretta*, 422 U.S. at 836, 95 S. Ct. at 2541; *see also* **Williams v. State**, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (recognizing trial court not required to inquire into defendant's background to determine knowing and intelligent waiver); **Blankenship v. State**, 673 S.W.2d 578, 584 (Tex. Crim. App. 1984) (stating that to "require a lawyer's expertise as a prerequisite to asserting the right [to self-representation] would deny it to all but a small portion of society"). Moreover, the fact that a properly admonished defendant made tactical or procedural errors in his self-representation does not render him incompetent to have waived his right to counsel. *See* **Cerf v. State**, 366 S.W.3d 778, 786 (Tex. App.—Amarillo 2012, no pet.).

In light of the record demonstrating Appellant's ample interaction with the trial court and viewing that evidence in a light most favorable to the trial court's ruling, we conclude that the record supports the finding that Appellant knowingly, intelligently, and voluntarily waived his right to counsel. *See id.*

Appellant's second issue is overruled.

## DISPOSITION

Having overruled both of Appellant's issues, we *affirm* the trial court's judgments.

BRIAN HOYLE
Justice

Opinion delivered January 31, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JANUARY 31, 2017

NO. 12-15-00162-CR

**GAYLORD OWEN STEVENS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1587-14)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 31, 2017**

**NO. 12-15-00163-CR**

**GAYLORD OWEN STEVENS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1588-14)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 31, 2017**

**NO. 12-15-00164-CR**

**GAYLORD OWEN STEVENS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1589-14)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*